**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Anderson, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Gregory K. McGrath, et al.,<br><br>    Defendants. | No. CV-11-01175-PHX-DGC<br><br>**ORDER** |

On June 8, 2012, a group of 117 investors in D8 2010 Inc., fka Domin-8 Enterprise Solutions, Inc., and its predecessor limited liability company, D8 2010, LLC, fka Domin-8 Enterprise Solutions, LLC ("Domin-8" or "the company"), filed their Second Amended Complaint ("SAC" or "the complaint") against ten of the company's former officers, four individuals who allegedly sold securities for the company, and five corporate entities. Doc. 98. On June 29, 2012, Defendant Gregory K. McGrath, Defendant Lawrence Labine, and a group of Director and Officer Defendants[1] ("D&O Defendants") filed separate motions to dismiss. Docs. 101, 103, 105. The motions have been fully briefed. Docs. 112, 113, 114, 124, 126, 127, 128, 130. For the reasons stated below the Court will grant Defendants McGrath, Labine, and Ensign's motions in full, and grant the D&O Defendant's motion in part.[2]

---

[1] Officers: John A. Ensign, Daniel P. Buettin, Thomas Thistleton; Directors: Sean D. Curran, Charles V. Shamblee III, Chris A. Lewis, Ronald J. Rapp, Jay Hill, and Robert Routt.

[2] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. Background.

Domin-8 is a software company that provides software solutions and related services to the property management industry in the United States and Canada. Doc. 98, ¶ 118. The history of Domin-8's security offerings, acquisition strategy, and eventual bankruptcy are chronicled at great length in the SAC. Doc. 98 at 42-134. Suffice it to say that Domin-8 raised tens of millions of dollars through securities offerings, employed an aggressive acquisition strategy, operated at a loss, and, on September 17, 2009, filed for Chapter 11 bankruptcy. Doc. 98, ¶¶ 118, 121, 141-55, 298, 301-02, 328-330, 332-33, 343, 346-47, 359, 361, 366, 377, 402. After filing for bankruptcy, Plaintiffs allege that entities established by DeWaay Financial and Defendant Lawrence Labine attempted to purchase Domin-8, but their bid was rejected by the Bankruptcy Court. Doc. 98, ¶¶ 845-63. Plaintiffs claim that "[a]s a consequence of the calculated bankruptcy filing and failed attempt to sell Domin-8's assets . . . , the Investors lost all or a substantial portion of their investment in Domin-8." Doc. 98 ¶ 864.

Plaintiffs allege violations of federal securities laws and breaches of state law fiduciary duties. Claims I-X and XII allege violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, claims XI and XIII allege violations of Section 20 of the Securities Exchange Act of 1934, and claim XIV alleges violations of Section 14(e). Doc. 98 ¶¶ 865-1216. Plaintiffs claim that Directors, Officers, and others who sold securities in Domin-8 misled investors by failing to disclose material information and by continuing to sell securities after Domin-8 began contemplating bankruptcy. *Id.* Against the members of the Board who did not make public statements or sell securities, Plaintiffs allege misconduct based on the Board's approval of new securities offerings despite their knowledge of the company's financial condition. *Id.* The remaining claims, XV-XXII, are for breaches of fiduciary duties based on essentially the same conduct. *Id.*

## II. Legal Standard.

### 1. Pleading Standard.

When analyzing a complaint for failure to state a claim to relief under

Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 556).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To allege fraud with particularity, a [claimant] . . . must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Securities claims must also meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u-4(b)(1-2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). When plaintiffs allege misleading statements or omissions, the PSLRA requires that the complaint "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

**2.     Elements of 10b-5 Claim.**

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Janus Capital Group, Inc.*, 131 S. Ct. 2296, 2301, n.3 (2011); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

**III.     Discussion**

      **1.     D&O Defendants.**

           **A.     Personal Jurisdiction.**

D&O Defendants argue that this Court does not have personal jurisdiction over them with respect to the state law claims. Doc. 105 at 4-9. The Court may assert pendent personal jurisdiction over state law claims that arise out of the same nucleus of operative facts as federal claims for which there is nationwide service of process. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004) (pendent personal jurisdiction applies "where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."). In this case, the state law claims against the D&O Defendants arise out of a common nucleus of operative facts with the federal securities claims for which there is nationwide service of process. The Court therefore may exercise pendent personal jurisdiction over the D&O Defendants. *Id.*[3]

Plaintiffs have no federal securities claim against Defendant Ensign. As a result, pendent personal jurisdiction cannot apply to him. Doc. 114 at 3. In claim XXI, Ensign is charged with a breach of fiduciary duty. Because that claim arises from some of the same operative facts as other claims in the suit, it would be sufficient for supplemental subject matter jurisdiction under 28 U.S.C. 1367.

The Court can exercise personal jurisdiction over Defendant Ensign, however, only if he has minimum contacts with Arizona. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court must exercise either general or specific personal jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466

---

[3] D&O Defendants argue at some length in their motion to dismiss (Doc. 105) and in a prior motion (Doc. 79) that they lack minimum contacts with Arizona sufficient to create either general or specific personal jurisdiction. As these Defendants correctly acknowledge in their reply, however, minimum contacts are not required for pendent personal jurisdiction. Doc. 128 at 2-3; *Action Embroidery*, 368 F.3d at 1180-81.

- 4 -

U.S. 408, 414-15 nn.8-9 (1984); *Ziegler*, 64 F.3d at 473.  Because Plaintiffs do not argue for general jurisdiction over Ensign, the Court will consider whether Ensign's contacts with Arizona are sufficient to support specific jurisdiction.

The Ninth Circuit applies a three-part test.  Specific jurisdiction exists only if: (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)).

Plaintiffs argue that Ensign signed the registration documents for securities to be sold in Arizona.  Doc. 95 at 12-13.  Because Plaintiffs' only specific claim against Ensign relates to his participation in the alleged "stalking horse" bid and not in the registration (Doc. 98 at 200-201), however, his signing of registration documents does not provide a basis for specific jurisdiction – the claims against him do not arise out of signing of the registration documents.

Plaintiffs also argue that Ensign facilitated the "stalking horse" bid with Defendant Labine, who is an Arizona resident.  Doc. 95 at 12-13.  Because Labine is a citizen of Arizona, Plaintiffs argue that it is reasonable to infer that Ensign had communications and negotiations with Labine in Arizona as part of the bid.  But the paragraphs cited by Plaintiffs in support of this argument (¶¶ 129, 130, 144, 590, 594, 597, 601-601 of the First Amended Complaint (Doc. 48)) say nothing about Ensign's role in negotiating the bid and nothing about his activities in or communications with Arizona.  Although it is true that the Court must accept allegations in the complaint as true at the motion to dismiss stage, and must draw reasonable inferences from those allegations in Plaintiffs' favor, *Fiore v. Walden* 657 F.3d 838, 848 (9th Cir. 2011), the Court cannot base personal jurisdiction on a complete absence of forum-contact allegations.  Because Plaintiffs identify no allegation regarding Ensign's contacts with Arizona in connection with the

bid, they have failed to allege a basis for personal jurisdiction over Ensign.[4]

## B. Adequacy of the 10b-5 Pleading.

As a threshold matter, D&O Defendants argue that the complaint consists of impermissible "shotgun" or "puzzle" pleading that does not meet the PSLRA's heightened pleading standard. *In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073-75 (N.D. Cal. 2001) (collecting cases). Puzzle pleading requires a defendant to "match up" the statements alleged in the complaint with the reasons why those statements are misleading, *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp 2d 833, 842 (N.D. Cal. 2000), while shotgun pleading incorporates each prior allegation into each subsequent claim for relief, making it difficult to determine which facts apply to which claims and defendants, *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-1280 (11th Cir. 2006). The Court agrees that the complaint is too long and unwieldy, but with respect to D&O Defendants, there are sufficient facts for the Court to evaluate the adequacy of the pleading. The Court will focus primarily on the factual allegations highlighted in Plaintiffs' responses provided they are also found in the complaint.

Plaintiffs draw a distinction between the Director Defendants and the Officer Defendants. Doc. 114 at 1-2. Plaintiffs claim that the Director Defendants (including Curran, Shamblee, Lewis, Rapp, Hill, and Routt) approved securities offerings despite knowledge that the company was failing, and did not control Defendant McGrath who was the CEO and a fellow board member. *Id.* According to Plaintiffs, these actions are sufficient to support liability under Rule 10b-5. *Id.* With respect to the Officer Defendants (including Buettin and Thistleton), Plaintiffs allege that they made statements regarding the securities offerings, but omitted information about Domin-8's financial circumstances in violation of Rule 10b-5. *Id.* Defendants argue that Plaintiffs have not

---

[4] The Court concludes below that the claim against Defendant Ensign is derivative and cannot be asserted by Plaintiffs. The Court nonetheless addresses the issue of personal jurisdiction because Plaintiffs are granted leave to amend and the Court's view of the personal jurisdiction argument may be helpful to the parties.

- 6 -

pled a material misrepresentation or omission by the Officers and Directors, scienter, reliance on the misrepresentation or omission, and loss causation. *Dura Pharms.,* 544 U.S. at 341-42.

### i. Material Misrepresentation or Omission.

Rather than alleging a statement or omission by Directors, Plaintiffs claims are based on the Boards' approval of securities offerings when they knew that the company was in poor financial condition. Doc. 114 at 4-6. In *Central Bank of Denver, NA, v. First Interstate Bank of Denver, NA.*, 511 U.S. 164, 191 (1994), the Supreme Court held that there is no private right of action under § 10(b) for those who merely aid and abet a violation of the statute, but liability is still possible for defendants who do not make public statements under subsections (a) and (c) of Rule 10b-5. 17 C.F.R. § 240.10b-5(a-c). In *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 522 U.S. 148 (2008), the Supreme Court held that "[c]onduct itself can be deceptive," dispelling the notion that "there must be a specific oral or written statement before there could be liability under § 10(b) or Rule 10b-5." *Id.* at 158. Plaintiffs argue that the Board's conduct of approving the securities offerings is sufficient to plead a violation of Rule 10b-5(a) and (c), which prohibit the use of "any device, scheme, or artifice to defraud" or the "engage[ment] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

In the Ninth Circuit, liability based on Sections (a) and (c), referred to as "scheme liability," may not be based on the same misrepresentation or omission as a Rule 10b-5(b) claim. *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011) ("A defendant may only be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations or omissions."). Plaintiffs base their Rule 10b-5(b) claims against the company's officers on alleged omissions related to Domin-8's securities offerings, but argue that the Boards' approvals

of the offerings constitutes conduct beyond the misrepresentations or omissions. They argue that the Boards approved offerings knowing that the securities were "worthless." Doc. 114 at 7.

The facts that Plaintiffs allege to establish the Boards' knowledge regarding the value of the securities relate to meetings in which officers and directors were told that the company would not qualify for venture capital without first filing for bankruptcy. Doc. 98 ¶¶ 769, 785, 832. The Court must accept as true Plaintiffs' allegations that the company had contemplated bankruptcy and the allegation that the directors of the company knew that the financial health of the company was poor. Even crediting those assertions as true, however, the Court cannot find that Plaintiffs have alleged sufficient conduct beyond the alleged misrepresentations to constitute a scheme within the meaning of Rule 10b-5(a) and (c). Every company in poor financial condition does not fail, and it cannot be said that approving a securities offering on behalf of a company in poor financial condition is always and inevitably a fraudulent scheme. Struggling companies may be rescued by a securities offering made with full disclosures. Investors may elect, upon full disclosure, to invest in a struggling company that has a reasonable prospect of survival and a significant upside if it does. Thus, the single fact that the company had considered bankruptcy does not mean that approval of a securities offering by Defendants was a fraudulent scheme. This is particularly true in light of Plaintiffs' allegations that Domin-8 later had a reasonable possibility of survival. Doc. 98 ¶ 819-821, 839-844. Additional factual allegations are needed to suggest that approval of the securities offering was part of a knowing scheme to defraud investors. On this record, Plaintiffs have not alleged sufficient facts to support scheme liability.

In claim XII, Plaintiffs allege that Defendant Officers (Buettin and Thisleton) made statements in connection with a securities offering and omitted the fact that the company had contemplated bankruptcy. Doc. 114 at 16; Doc. 98 ¶ 1092-1094. Plaintiffs point to statements in a letter to investors dated April 3, 2009, regarding the company's 2008 securities offering. Doc. 114-4. In the letter, Defendants Buettin and Thistleton

acknowledged Domin-8's operating losses, but Plaintiffs allege that they put a positive spin on the information by claiming that the "operating losses are under control." Doc. 114 at 16-17. In the SAC, Plaintiffs quote additional language from the letter stating that the 2008 offering was "part of an overall solution as other alternatives would potentially negatively affect the character or terms of [investor's] investments, whether debt or equity, and would also potentially be dilutive to equity holders," and that the support of the investors was "definitely require[d] . . . in making the Offering a success." Doc. 98 ¶ 1092-1094. Plaintiffs argue that Defendant Officers should have "disclosed . . . in the correspondence that the company was actively considering the possibility of bankruptcy at the same time that it was trying to save the company by raising money through the offering." Doc. 114 at 17.

Rule 10b-5(b) makes it illegal to "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Defendants claim that Plaintiffs fail to show that the statements were misleading. The PSLRA requires that the "complaint . . . specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B); Doc. 128 at 7. Plaintiffs point to the specific absence of any mention of bankruptcy in the letter; Defendants point to several cautionary statements in the letter. Doc. 114 at 16. Given these competing factual arguments, whether the letter as a whole is misleading amounts to a factual dispute that cannot be resolved at the motion to dismiss stage. The Court will deny the motion to dismiss with regard to claim XII against Officer Defendants.

### ii.     Scienter.

For Rule 10b-5 claims, the Supreme Court has defined scienter as the "intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). The Ninth Circuit requires that "intent to deceive" be alleged "in great detail, [by] facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 974 (9th

Cir. 1999).  A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  A court must first determine whether any single allegation is "sufficient to create a strong inference of scienter; [and] second, if no individual allegation is sufficient," the court must conduct "a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *N.M State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011).

Plaintiffs' allegations of scienter for both the Officers and Directors are based on the "reckless conduct" of making securities offerings and failing to disclose the poor financial condition of the company.  By "reckless," Plaintiffs seem to mean that the directors and officers engaged in conduct that entailed an unjustifiably high risk of bankrupting the company because they personally held securities and options to purchase securities that would be worth more if the company survived long enough to go public. Doc. 114 at 8.  This belief is reinforced, Plaintiffs allege, by the Board's decision to swap preferred securities for common stock, an exchange that placed their own shares on the same level as earlier investors' should the company go public.  *Id*.

With respect to the theory that the Officers and Directors recklessly drove the company toward bankruptcy, Defendants' conduct could be explained as the actions of incompetent or over-zealous managers.  In *Spot Runner*, the Ninth Circuit determined that scienter was adequately pled when the plaintiffs alleged that a company's founders continued to solicit investment in the company while they sold their own shares despite an agreement to inform the investors of any such sales.  655 F.3d at 1054.  There, the inference regarding the defendants' intent to deceive was reinforced by the simultaneous selling of their own shares and marketing new shares to the public.  In this case, Plaintiffs do not allege that Defendants were selling their own stock or somehow deriving financial benefit at stockholder expense while simultaneously endorsing the company's offering. It is true that they stood to gain from the company's continued survival, but that is

virtually always the case, and is true of Plaintiff shareholders as well. In other words, Plaintiffs theory of scienter is weakened by their failure to explain how the interests of the Directors and Officers diverged from the interests of the shareholders. Defendants note that improving the financial health of a company is often a principal object of a securities offering (Doc. 128 at 7), and Plaintiffs appear to concede in their response that the Defendants were "trying to save the company." Doc. 114 at 17. Plaintiffs' theory of scienter seems less compelling than the counter-inference that Defendant Directors were trying to save the company. *Tellabs*, 551 U.S. at 324.

With respect to the Officer Defendants, Plaintiffs plead additional facts that buttress their theory of scienter. They argue that the Officer Defendants refused an infusion of cash that could have saved the company, choosing instead to file for bankruptcy. Doc. 98 ¶ 839-844. This secondary theory is that after recklessly failing to disclose the extent of the company's problems when making securities offerings in an attempt to avoid bankruptcy, the officers changed tactics and chose to file for bankruptcy when it was not inevitable but was in their personal best interests. Plaintiffs allege that the Officers solicited a stalking horse bid for the company from friendly investors that would have allowed the Officers to maintain high positions within the company when it emerged from bankruptcy. Doc. 98 ¶¶ 134-136, 836-838, 855-859. At this stage in the pleadings, Plaintiffs have alleged sufficient facts to support a theory that Defendant Officers acted with scienter. *Tellabs*, 551 U.S. at 324.

### C. Adequacy of Section 20(a) Claim.

Section 20(a) allows for vicarious liability of control persons when someone within their control violates another section of the Exchange Act. Plaintiffs allege that D&O Defendants are liable under this section because the CEO, McGrath, violated Section 10(b) and the Officers and Directors failed to stop him. While the Directors' status as "control persons" is in dispute, the Court need not reach that question as it will dismiss all claims against McGrath. Because there is no underlying 10(b) violation, this claim must be dismissed.

### D. Adequacy of Section 14(e) Claim.

Claim XIV alleges a violation of Section 14(e) of the Exchange Act. An adequate pleading under Section 14(e) requires allegations of misstatements or omissions of material facts in connection with a tender offer. *Plaine v. McCabe*, 797 F.2d 713, 721 (9th Cir. 1986). This claim is brought against the 2006 Board and McGrath. As noted above, Plaintiffs do not allege facts showing any misstatements or omissions were made by Defendant Directors. Because they have not pled any misstatements or omissions, the Court will dismiss this claim with respect to the 2006 Board.

### E. State Law Claims.

#### i. Pendent Personal Jurisdiction.

Because the Court has dismissed the federal claims against the Director Defendants, it will decline to exercise pendent personal jurisdiction over the state law claims asserted against them. *See Action Embroidery*, 368 F.3d at 1180-81 ("we leave it to the discretion of [the district court] to decide whether to retain or dismiss the pendent state-law claims"); *Toensing v. Brown*, 528 F.2d 69, 72 (9th Cir. 1975) ("upon dismissal of the federal claim before trial, a proper exercise of discretion required dismissal of the pendent state law claim"); *see also D'Addario v. Geller*, 264 F. Supp. 2d 367, 387-88 (E.D. Va. 2003) (holding that the state law claims against a particular defendant should be dismissed when the federal claims against that defendant were dismissed unless an independent basis for personal jurisdiction exists). Therefore, claims XV, XVI, XVII, and XX are dismissed as against the Defendant Boards.

#### ii. Standing

Two state law claims, XVIII and XXI, were brought against Officer Defendants and therefore the exercise of pendent personal jurisdiction is appropriate. D&O Defendants move to dismiss these claims on the grounds that they are derivative in nature and Plaintiffs lack standing to bring claims on behalf of the company.

Domin-8 was incorporated in Delaware and both parties agree that Delaware law governs the distinction between direct and derivative claims. The question was reduced

to a two part inquiry in *Tooley v. Donaldson, Lufkin & Jenerette, Inc.* 845 A.2d 1031, 1035 (Del. Ch. 2004): (1) who suffered the alleged harm – the corporation or the suing stockholder individually, and (2) who would receive the benefit of the recovery or other remedy?  The court then simplified the analysis, explaining that a claim is direct if "the plaintiff demonstrate[s] that he or she can prevail without showing an injury to the corporation." *Id.* (quoting *Agostino v. Hicks*, 845 A.2d 1110, 1118 (Del. Ch. 2004)).  If the claim is derivative in nature, Defendants argue that only the liquidating trustee named in Domin-8's approved bankruptcy plan has power to bring the claim.  Doc. 105 at 25 (citing Domin-8 Amended Bankruptcy Plan, Case No. 3:09-bk-35789 (BK Doc. 550) at 7-8, 16-18, 36, 43-44).

The factual allegations set forth in claims XVIII relate to the 2008 Series D Senior Subordinated Debentures and the alleged omissions of Officers Buettin and Thistleton in statements about that offering.  Doc. 98 at 195.  It alleges that as a result of Buettin and Thistleton "selectively communicating information about the Company's finances," the investors did not know that the company "had been contemplating bankruptcy."  *Id.* ¶¶ 1172, 1174.  Had they known, Plaintiffs allege, they would not have invested in the 2008 Series D Senior Subordinated Debentures.  *Id.* ¶ 1174.  In the next paragraph, however, Plaintiffs allege that the offering increased the overall debt of the company and led to the company's bankruptcy.  *Id.* ¶ 1175.  This allegation accords with the general statement from the complaint that Plaintiffs' injuries resulted from Domin-8's bankruptcy.  Doc. 98 ¶ 864.  Because Plaintiffs' only alleged injuries result from the company's bankruptcy, and the bankruptcy clearly injured the company as well as the investors, Plaintiffs have not demonstrated that they can prevail without showing an injury to the corporation.  Their claims are therefore are derivative, not direct.  *Agostino*, 845 A.2d at 1118.

In claim XXI Plaintiffs allege a breach of "fiduciary duty for disloyalty and bad faith" against Officers Buettin, Thistleton, and Ensign.  Doc. 98 at 200.  The factual allegations relate to the manner in which the officers negotiated the friendly bankruptcy

- 13 -

bid. Doc. 98 ¶ 1203. Plaintiffs allege that the Officers were personally interested in the negotiations and that their "actions caused injury to all debt and equity holders in the Company." Doc. 98 ¶ 1205. This claim, which suggests that the bankruptcy was part of a plan to secure the Officers high positions in the post-bankruptcy entity, also clearly alleges an injury to the corporation. Because Plaintiffs cannot show harm to themselves under this claim without also showing harm to the company, the claim is derivative.

Plaintiffs do not contest Defendant's argument that Domin-8's derivative claims are under the control of the liquidation trustee. Because claims XVIII and XXI are derivative in nature, the Court finds that Plaintiffs do not have standing to bring them on behalf of Domin-8.

### 2. Defendant McGrath.

Defendant McGrath is named in claims I-V, XI, XIII, and XX as a member of various Boards, in claims VI-X, and XIX in his individual capacity as Domin-8's CEO, and in claims XIV-XVII in both capacities. With respect to the securities fraud claims, Defendant moves to dismiss the complaint for failure to state a claim. The pleading standards are the same as those set forth above.

### A. Adequacy of the 10b-5 Pleading.
#### i. Misleading Statement or Omission.

With respect to the claims against McGrath, the concerns about shotgun or puzzle pleading are much more significant. He is named as a defendant on nearly every claim in the complaint, and the specific statements or omissions upon which each claim against him is based are nearly impossible to discern.

In their response, Plaintiffs seem to argue that because they have pled facts alleging that McGrath was in possession of information he did not disclose, his omissions make him liable. Doc. 113 at 5. They claim to have "identfie[d] *in excruciating detail* each and every statement and projection . . . that McGrath made in order to establish a framework for what he actually knew when he omitted material information in connection with the securities sold to Plaintiffs." Doc. 113 at 3 (emphasis in original).

- 14 -

Using McGrath's statements to establish what he knew could be helpful, but the SAC does not identify the particular statements that were misleading as a result of omitted information. Rule 10b-5(b) makes it illegal to "omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." Plaintiffs fail to direct the Court to specific statements so that it can evaluate the circumstances under which the statements were made.

Where Plaintiffs finally approach the required level of specificity and flag actual statements that they allege were made misleading by material omissions, they do so only "by illustration." Doc. 113 at 11. That illustration is the kind of specificity with which all statements must be identified. Unfortunately, the particular illustration quotes specific language from an alleged McGrath communication, but provides no citation to where that language is ever mentioned in the SAC. Doc. 113 at 11. Plaintiffs specifically reference McGrath's projections (Doc. 113 at 17), but, in response to Defendant's arguments that unrealized projections cannot be the basis of a securities claim, Plaintiffs state that their claims "sound primarily in the nature of omissions and are not based directly on the projections set forth in the general allegations of the SAC." Doc. 113 at 7. Basing their claims in omissions does not excuse Plaintiffs from the PSLRA's requirement that allegedly fraudulent statements be pled with specificity. 15 U.S.C. § 78u-4(b)(1)(B).

While the Court was able to find enough information to rule on the claims against the D&O Defendants, Plaintiffs simply do not provide sufficient citations to the 1,216 paragraphs in the SAC to enable the Court to evaluate the claims made against McGrath. The Court is left to "connect-the dots," an impractical and unnecessarily burdensome task in a complaint of this length. *In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 988 (D. Ariz. 1999). Plaintiffs, not the Court, bear the burden of demonstrating the sufficiency of their complaint. The Court will dismiss all claims against McGrath.

### B. Supplemental Jurisdiction over State Law Claims.

Having dismissed the federal securities claims against Defendant McGrath, the Court declines to exercise supplemental jurisdiction over the state law claims against

him.  *See* 28 U.S.C. § 1367(c)(3).

### 3. **Defendant Labine.**

The only claim against Defendant Labine and the corporate defendants is claim XXII for aiding and abetting breach of fiduciary duty.  Personal jurisdiction over Labine is not contested as he in an Arizona resident.  Doc. 98 ¶ 116.  The Court may exercise supplemental jurisdiction over the claim because it is transactionally related to the securities claim against Defendant Officers that survived the motion to dismiss.  28 U.S.C. § 1367(a).  However, because this claim, like several of the other fiduciary claims is derivative in nature, Plaintiffs do not have standing to bring it on behalf of the company.

Plaintiffs argue in their response that the Directors and Officers violated 8 Del. C. § 144(a)(2) by failing to disclose that they were interested when they negotiated the stalking horse bid.  Doc. 112 at 3-4.  They then cite an unpublished opinion of the Delaware Chancery Court that held that when corporate officers violate the Delaware General Corporate Law they violate the rights of the shareholders, not the corporation. *Grayson v. Imagination Station, Inc.*, No. 5051, 2010 WL 3221951 at *5 (Del. Ch. 2010). 8 Del. C. § 144(a)(2) generally provides that interested transactions will not be voided so long as there is disclosure to shareholders who are entitled to vote on the transaction.  It does not appear that Plaintiffs have pled facts that show a violation of this section.

In the SAC, Plaintiffs claim that Labine and the corporate entities participated in a breach of fiduciary duties on the part of Domin-8 Officers and Boards by helping to sell securities and by "attempting to purchase the assets of the Company if it agreed to file bankruptcy, which it did." *Id*. ¶¶ 1211-12.  Plaintiffs' alleged harm is again traceable to the actions of the company's officers that led to bankruptcy.  Because the bankruptcy caused harm to the company as well as the investors, this claim is derivative and only Domin-8's liquidation trustee has standing to bring it. *Agostino*, 845 A.2d at 1118. Therefore, this claim must also be dismissed.

**IT IS ORDERED:**

1. D&O Defendants' Motion to Dismiss (Doc. 105) is **granted in part and denied in part** as set forth above
2. Defendant McGrath's Motion to Dismiss (Doc. 101) is **granted**.
3. Defendant Labine's Motion to Dismiss (Doc. 103) is **granted**.
4. All claims, with the exception of claim XII, in Plaintiffs' Second Amended Complaint (Doc. 98) are **dismissed** with leave to amend.
5. Plaintiffs shall file a Third Amended Complaint by **November 16, 2012**. Plaintiffs are cautioned that this is the final opportunity the Court will give them to amend the complaint.

Dated this 1st day of November, 2012.

_____
David G. Campbell
United States District Judge