**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Anderson, et al., | No. CV-11-01175-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Gregory K. McGrath, et al., | |
| Defendants. | |

Plaintiffs are a group of more than one hundred individuals and entities that purchased securities offered by D8 2010 Inc., f.k.a. Domin-8 Enterprise Solutions, Inc. ("Domin-8") and its predecessor limited liability company. The Court issued an order on November 1, 2012, granting in part and denying in part Defendants' motions to dismiss. Doc. 132. The Court instructed Plaintiffs that they would be afforded one additional opportunity to plead their claims. Plaintiffs filed a third amended complaint on November 16, 2012, re-alleging violations of federal securities laws against former officers and directors of Domin-8. Doc. 133. Collectively, the director and officer Defendants ("D&O Defendants") filed a motion to dismiss for failure to state a claim and Defendant Gregory K. McGrath filed a similar motion. Docs. 138, 139. The motions are fully briefed. Docs. 142,143,147,148. For the reasons that follow, the Court will grant McGrath's motion and grant the D&O Defendants' motion in part.[1]

---

[1] The requests for oral argument are denied because the parties have fully briefed the issues, the Court is very familiar with the case, and oral argument will not aid the Court's decision. Fed. R. Civ. P. 78(b).

## I. Background.

The factual basis surrounding Domin-8's acquisition strategy, securities offerings, and bankruptcy are laid out in detail in the complaint. Plaintiffs have added additional quotations and factual allegations to the third amended complaint in response to the Court's finding that the second amended complaint contained impermissible puzzle pleading that made it impossible for Defendants and the Court to sort out which statements were alleged as the basis for Defendants' liability. Doc. 132.

## II. Legal Standard.

### 1. Pleading Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 556).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To allege fraud with particularity, a [claimant] . . . must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Securities claims must also meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1-2). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). When plaintiffs allege misleading statements or omissions, the PSLRA requires that the complaint "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiffs must also "state

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

### 2. Elements of 10b-5 Claim.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301, n.3 (2011); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

## III. Analysis.

### 1. McGrath.

This is not a class action. The claims against Defendant McGrath are brought individually by 117 different Plaintiffs (including husbands and wives and individuals who represent entities) and relate to many different securities offerings made at different times and in different forms. Because this case concerns 117 separate claims, it is the equivalent of 117 separate lawsuits and each Plaintiff must plead all of the elements of a Rule 10b-5 claim and satisfy the exacting standards of the PSLRA and Rule 9(b). One Plaintiff's pleading of a claim cannot satisfy the pleading requirements for any other claimant.

As a result, each Plaintiff must specifically point to a particular misrepresentation or omission made by McGrath and demonstrate how it is connected to his or her purchase of Domin-8's securities. *Dura Phrams., Inc.*, 544 U.S. at 341-42. He or she must also show reliance on McGrath's statement or omission. *Id*. Furthermore, the PSLRA requires that each Plaintiff specifically plead "*each* statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B) (emphasis added). Plaintiffs' task is made even more exacting by the Ninth Circuit's interpretation of Rule 9(b) that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."

1 *Vess v. Ciba-Giegy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v.*
2 *Pickett*, 137 F.33d 616, 627 (9th Cir. 1997)).  "[A] plaintiff must set forth *more* than the
3 neutral facts necessary to identify the transaction.  The Plaintiff must set forth what is
4 misleading about a statement, and why it is false." *In re GlenFed,* 42 F.3d at 1548.

5         The third amended complaint spans 181 pages and 1,114 paragraphs.  The first
6 part of the complaint contains a list of Plaintiffs and Defendants.  Doc. 133 at 3-33.
7 Paragraphs 4-97 contain the names of each of the Plaintiffs, how much money they
8 invested, and which securities they acquired.  *Id*.  Although detailed, this section does
9 virtually nothing to plead the core elements of a Rule 10b-5 claim other than assert that
10 Plaintiffs purchased securities issued by Domin-8.

11         The next section of the complaint is labeled "General Allegations."  *Id.* at 33-136.
12 Covering 103 pages and 762 paragraphs, this section chronicles the financial history and
13 business dealings of Domin-8.  *Id.*  It describes various securities offerings upon which
14 Plaintiffs' claims are based, and recounts many statements allegedly made by McGrath
15 concerning Domin-8's financial and business prospects in connection with those
16 offerings.  *Id*.  This section does mention individual Plaintiffs by their last names, but
17 usually in generalized terms and in groups.  For example, it alleges that eight Plaintiffs
18 purchased a specific securities offering "in reliance on McGrath's prior statements" (*id.*
19 ¶ 470) or that four Plaintiffs "relied on the positive statements that McGrath had been
20 making to them directly about the company for years" (*id*. ¶ 471).  But these allegations
21 do not identify the specific "prior statements" or "positive statements" Plaintiff allegedly
22 heard and relied upon.  It is possible that these allegations are referring to statements
23 attributed to McGrath in preceding paragraphs, but that is not clear – the reader is left to
24 guess which "prior statements" or "positive statements" were heard and relied on by
25 specific Plaintiffs.

26         At other times, the General Allegations section names some Plaintiffs and asserts
27 that they "relied on the statements that McGrath had communicated to Turpin about the
28 company's growth potential," but again without identifying the statements (*id.* ¶ 472).

- 4 -

Again, those statements might also be contained in the scores of preceding paragraphs that set forth the narrative about Domin-8, but the reader cannot tell.

Sometimes the General Allegations section identifies a particular Plaintiff as having attended a meeting or met with McGrath in his home, usually with no specific date, and sometimes even recounts in general terms what McGrath said – "McGrath said that Glen could expect a return of ten-to-thirty times his investments based on the company's acquisition strategy" (*id.* ¶ 474). But the details of the meeting, such as when precisely it occurred, where it occurred, who attended, or what was said, are virtually never provided. Moreover, these paragraphs identifying a specific misrepresentation made to a specific Plaintiff appear haphazardly throughout the General Allegations section of the complaint, with no clear organization and no way of tracking through the section's 762 paragraphs to see what was said to any particular Plaintiff.

Some portions of the General Allegations are a bit more specific. For example, paragraphs 208-220 regarding the 2005 Series C Subordinated Convertible Debentures contain statements from McGrath communicated to particular investors at a particular meeting. *Id*. ¶¶ 208-220. While this level of detail is closer to meeting the threshold necessary to state a claim, Plaintiffs still fail to adequately demonstrate how and why the statements were false at the time they were made. Paragraph 218 states that the "import" of the statements was that the offering was a "sound investment." *Id.* ¶ 218. Future events may have demonstrated that the offering was not a sound investment, but the fact that the company eventually failed is not evidence that McGrath's statements were false at the time they were made. Despite modest additional detail, this subsection does not remedy the complaint's failure to plead not only what statements were made, but "the reason or reasons why the statements[s] [are] misleading." 15 U.S.C. § 78u-4(b)(1)(B).

The Plaintiffs' actual legal claims appear in the complaint after the General Allegations section. Doc. 133 at 136-180. Each claim describes a securities offering and false statements or omissions McGrath allegedly made in connection with that offering, but the claim usually does not say when the statements were made, where they were

made, or specifically to whom they were made, although the claims sometimes will say that McGrath made statements to "Investors and their brokers" or something similarly general (*id.* ¶ 872). The claim section often avers generally that "Investors relied" on McGrath's false statements and omissions (*id.* ¶ 909), but never identifies a specific false statement that was made to a specific plaintiff or describes the context in which the statement was made or how the Plaintiff relied on it in acquiring Domin-8 securities.

Investors are tied to specific claims only by a footnote at the beginning of each claim that lists Plaintiffs who purchased the securities at issue in the claim. *E.g., id*. at 136 n. 3. The footnotes do nothing more than list Plaintiffs. *Id.* They say nothing about when or where particular Plaintiffs purchased the securities at issue in the claim, nor do they identify the misrepresentations or omissions upon which individual Plaintiffs allegedly relied. The claims highlight several statements by McGrath that are allegedly misleading and relate to the offering in question, but do not contain information concerning which Plaintiffs had knowledge of and relied on which statements and how those statements were misleading under the circumstances in which they were made.

To make these determinations for an individual Plaintiff, the reader would be required to (1) identify a Plaintiff in the long footnote at the beginning of the claim, (2) identify the specific McGrath misrepresentations alleged in the claim, (3) track back through the 762 paragraphs of the General Allegations to see if the same misrepresentations are mentioned there, and (4) read the many paragraphs surrounding each misrepresentation to see if (5) any mention is made of the individual Plaintiff, (6) when he or she heard the misrepresentation, (7) why the misrepresentation was false or misleading in the context where it was made, (8) how the Plaintiff relied on the misrepresentation, and (9) whether allegations of loss causation have been made with respect to the Plaintiff and the misrepresentation. The same search would be required for any omissions the Plaintiff may be asserting. After many hours of attempting this very exercise in the third amended complaint, the Court has found it largely impossible to determine which Plaintiffs heard which specific misrepresentations, when and how the

1  misrepresentations were heard, whether they were false in the context made, whether the
2  Plaintiff relied on them, and whether loss causation has been pled.

3        This is precisely the kind of connect-the-dots exercise that should not be required
4  of courts and defense counsel.  Such "puzzle-pleading" – where the reader is left to put
5  together an enormously complex jigsaw puzzle – simply does not identify "'the who,
6  what, when, where, and how' of the misconduct charged" by each individual Plaintiff.
7  *Vess*, 317 F.3d at 1106.  Nor does it enable the reader to identify, on a Plaintiff-by-
8  Plaintiff basis, "each statement alleged to have been misleading, . . . the reason or reasons
9  why the statement is misleading," 15 U.S.C. § 78u-4(b)(1)(B), or the Rule 10b-5
10 elements of reliance and loss causation.  *Janus Capital Group*, 131 S. Ct. at 2301, n. 3.
11 Plaintiffs' second amended complaint was dismissed by the Court for the same reason.
12 Doc. 132 at 14-15.

13       It bears repeating that this is not a class action.  This case consists of 117 separate
14 lawsuits that have been joined by Plaintiffs in one omnibus complaint.  The fact that
15 Plaintiffs have elected to pursue their claims in a single complaint does not relieve them
16 of the obligation to plead their individual claims sufficiently.  Generalized or group
17 allegations do not suffice when they fail to provide the detail required from each Plaintiff.
18 Three illustrations will suffice to demonstrate the pleading flaws in the third amended
19 complaint.

20       Plaintiff V. Jerome Mirkil invested $50,000 in the 2007 Series C Senior
21 Subordinated Convertible Debentures on or about July 15, 2008.  Doc. 133 ¶ 63.  A
22 search of the complaint reveals that the only other mention of Mirkil's name (aside from
23 a footnote in the claims section) is in paragraph 711:

24 > Plaintiffs Glidden, Hove, Maulhardt, and Mirkil were all
25 > presented with unreasonably optimistic statements about the
> company's performance, the anticipated public offering, and
> the safe and 'lucrative' nature of the debenture based on the
26 > information that McGrath had communicated to GunnAllen
> and relied on the same in purchasing the 2007 Series C Senior
27 > Subordinated Convertible Debentures.

28

Doc. 133 ¶ 711.  This paragraph falls far short of meeting the requirements the PSLRA or Rule 9(b).  It does not identify the actual statements that are alleged to be misleading or why they are misleading.  15 U.S.C. § 78u-4(b)(1)(B).  It does not explain "who, what, when, where, and how" the statements were communicated to Mirkil.  *Vess*, 317 F.3d at 1106 (citations omitted).  It asserts reliance in an entirely conclusory fashion, without explaining how Mirkil heard or relied on the statements.

Plaintiff Stephen Ross invested $150,000 in the 2007 Series C Senior Subordinated Convertible Debentures on or about January 28, 2008.  Doc. 133 ¶ 76.  The complaint alleges that Ross purchased the 2007 Series C Senior Subordinated Convertible Debentures in March of 2008.  *Id*. ¶ 666.  Later, the complaint alleges that Ross was among a group of investors that were "presented with unreasonably optimistic statements about the company's performance, the anticipated public offering, and the safe and 'lucrative' nature of the debenture based on the information McGrath had communicated to GunnAllen."  *Id.* ¶ 679.  The nature, timing, and content of statements made by McGrath to GunnAllen are not identified, nor are the nature, timing, and content of the statements made by GunnAllen to Ross.  The body of the complaint contains numerous mentions of statements made to GunnAllen, but none of them is tied to Ross.  *E.g.*, *id.* ¶¶ 453, 461, 476, 488, 522.  The Court simply cannot determine which statements underlie Ross's claim, why they are alleged to be false, how he relied on them, or how they caused his loss.

Plaintiffs Frank W. and Karen L. Sciacca invested $50,000 in the Series A Preferred Stock offering on or about February 2, 2007.  *Id.* ¶ 84.  At paragraph 470 the complaint mentions them in a list – along with nine other investors – who "purchased Series A preferred Stock between February and April 27, 2007 in reliance upon McGrath's prior statements[.]"  *Id.* ¶ 470.  Sciacca – presumably Frank – allegedly relied on statements about the "company's growth potential and projections" that McGrath communicated to GunnAllen.  *Id.* ¶ 476.  But the complaint does not identify the particular statements Sciacca heard, when he heard them, why they were false or

misleading, or how they caused his loss.

As these examples illustrate, even when the Court attempts to track the claims of individual Plaintiffs through the mass pleading – something the Court and Defendants should not be required to do – Plaintiffs have not pled all the elements of a Rule 10b-5 claim. Nor have they satisfied the exacting standards of the PSLRA and Rule 9(b). And the Court certainly is not required to undertake this laborious exercise for all 117 Plaintiffs to see if the elements of a claim can be found in the complaint for any of them.

With respect to the element of reliance, Plaintiffs argue that the difficulties inherent in pleading separate Rule 10b-5 claims for over 100 plaintiffs in a single lawsuit are ameliorated by a presumption of reliance. There are two situations under which courts have recognized a presumption of reliance: fraud-on-the-market, *Basic Inc. v. Levinson*, 485 U.S. 224, 241-49 (1988), and omission-based claims, *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153-54 (1972).

Plaintiffs have not pled a fraud on the market theory or alleged that the securities were traded on an efficient market. The Court therefore finds the *Basic Inc.* presumption inapplicable. With respect to claims that primarily allege omissions, *Affiliated Ute* can relax the reliance requirement, but the Ninth Circuit has held that the "presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). This case is not based primarily on omissions. Numerous misrepresentations are alleged in the General Allegations portion of the complaint. Additionally, even if the reliance requirements were relaxed, the complaint fails to link specific Plaintiffs with specific omissions or to show why they were material in the context of a particular Plaintiff's purchases. No presumption of reliance applies, and even if it did, it could not remedy the flaws in the complaint.

The Court concludes that Plaintiffs have failed to satisfy the pleading requirements of the PSLRA and Rule 9(b) with respect to their Section 10(b) and Rule 10b-5 claims against McGrath. The Court will grant McGrath's motion to dismiss. Because Plaintiffs

1   have been unable to state a claim against McGrath in four different complaints, the
2   claims against him will be dismissed with prejudice.

### 2. D&O Defendants.

In its November order, the Court found that Plaintiffs had adequately alleged that several statements by Officers Buettin and Thisleton were misleading. Doc. 132 at 8-9. The Court also found that Plaintiffs had adequately pled scienter with respect to those officer Defendants. Doc. 132 at 9-10. At that stage, the Court found that D&O Defendants' general arguments with respect to reliance and loss causation were unpersuasive and did not address them in detail.

D&O Defendants now argue that this claim (Claim VII in the third amended complaint) is brought by a relatively small group of Plaintiffs and that all but two (Carl and Rosalie Anderson) purchased their stock before the allegedly misleading statements were made. Doc. 138 at 7 (citing Doc. 133 ¶¶ 6, 16, 28, 32, 38, 40, 44, 67, 70; *id*. at 174 n. 13). Plaintiffs argue that those who purchased stock before the statements were made were still misled by Defendants' failure to disclose, but this does not satisfy the PSLRA's burden of showing how particular statements became misleading as the result of omissions. Nor does it show that individual Plaintiffs actually relied on those statements. The Plaintiffs who purchased stock before the allegedly misleading statements were made have not adequately pled reliance on those statements.

With respect to the Andersons, the complaint states: "Based on the information that Buettin and Thisleton had communicated to Turpin and the supplement, as well as the omitted information about the true state of the company's financial affairs, Plaintiffs Anderson purchased the 2008 Series D Subordinated Convertible Debentures." Doc. 133 ¶ 817. Defendants argue that because the allegedly misleading statements were communicated to the Andersons through a third party stock broker – Turpin – Buettin and Thisleton were not the "makers" of the statements upon which the Andersons relied. Defendants' theory rests on their interpretation of the Supreme Court's holding in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011). In *Janus*,

1  the Supreme Court found that "[f]or the purposes of Rule 10b-5, the maker of a statement
2  is the person or entity with ultimate authority over the statement, including its content
3  and whether and how to communicate it." *Id*.  Consequently, a consulting firm that had
4  participated in drafting portions of a financial disclosure could not be liable for its
5  statements, while the entity that actually signed and issued the statement could be.
6  Defendants argue that because a third-party broker communicated the substance of the
7  statements to the Andersons, the officers who originally issued the statements cannot be
8  liable.

9  Defendants' reading of *Janus* conflicts with the Supreme Court's conclusion in
10 *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 522 U.S. 148, 172 (2008).
11 *Stoneridge* held that "[t]he maker of a fraudulent misrepresentation is subject to liability
12 . . . if the misrepresentation, although not made directly to the other, is made to a third
13 person and the maker intends or has reason to expect that its terms will be repeated or its
14 substance communicated to the other." *Id*. (quoting The Restatement (Second) of Torts
15 § 533, pp. 72-73(1977)).  Plaintiffs have alleged that Buettin and Thisleton had ultimate
16 control over the statements in the letter they issued and that they intended those
17 statements to be communicated to potential investors.  Furthermore, the language of
18 Rule 10b-5 anticipates liability for any person who "directly *or indirectly*" makes any
19 untrue statement.  The fact that the Andersons allege that the statements were
20 communicated through a third party may establish that they were indirect, but it does not
21 mean that Buettin and Thisleton cannot be liable.  The Court finds that Plaintiffs have
22 adequately alleged that Buettin and Thisleton were makers of allegedly misleading
23 statements and that the Andersons relied upon them.

24 Finally, Defendants argue that Plaintiffs have not adequately alleged loss
25 causation. The complaint does seem to allege various theories of loss.  It is sufficient that
26 Plaintiffs have pled that Buettin and Thistleton's misstatements concerned capital
27 problems that drove the company to bankruptcy. Doc. 133 ¶¶ 1097-98. The Court finds
28 that loss causation has been adequately pled with regard to the only remaining claim by

the Andersons.

### 3. Section 20(a) Claims.

Plaintiffs also assert claims against the Boards that approved all of the offerings under Section 20(a) for failure to control McGrath, Buettin, and Thisleton. The claim against the Boards for failure to supervise McGrath (claim VI) must be dismissed because Section 20(a) requires a predicate violation of Rule 10b-5 and the Court has ruled above that the 10b-5 claims against McGrath will be dismissed. *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

The claim against the 2009 Board for failure to supervise Buettin and Thisleton (claim VIII) will also be dismissed. Though the Andersons' predicate Rule 10b-5 claim will survive the motion to dismiss, Plaintiffs have failed to allege sufficient facts to demonstrate that the Board exercised actual control over Buettin and Thisleton. Boilerplate allegations are insufficient to establish that someone is a control person, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007), and "[t]he fact that a person is a CEO or other high ranking officer within a company does not create a presumption that he or she is a 'controlling person.'" *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011). The only additional allegations are that Board members participated in meetings with Buettin and Thistleton and in the day-to-day operations of the company, but none of the allegations are specific to particular individuals on the Board, nor do they allege any facts or actions beyond titles and meetings that demonstrate control. The Court will dismiss the Section 20(a) claim against the 2009 board.

**IT IS ORDERED:**

1. Defendant McGrath's motion to dismiss (Doc. 139) is **granted** with prejudice.

2. D&O Defendants' motion to dismiss (Doc. 138) is **granted in part and denied in part**. Claim VII is the only count that survives and only with respect to Plaintiffs Carl and Rosalie Anderson. The remaining claims against the D&O Defendants are dismissed with prejudice.

Dated this 26th day of March, 2013.

_____
David G. Campbell
United States District Judge